Good morning, your honors. May it please the court. My name is Ina Lipkin. I represent the Law Office of Kuldeep Dharawal. Could you speak up a little bit? It's hard to understand you. Sure. My name is Ina Lipkin. I represent the Law Office of Kuldeep Dharawal for the petitioner. This matter was brought up from the Board of Appeals, which had affirmed the immigration judge's denial of the asylum, withholding removal and convention against torture claims of the petitioner. The petitioner had filed for asylum based on persecution by the Indian authorities due to his Sikh religion and imputed political opinion and the fact that he was part of a social – had social membership in a group of his family, which was us. Counsel, I've got a problem on this case. Let me lay it out for you so you can address it. Yeah. It seems to me that the Harpenter Singh case that you rely on heavily is limited by DINU to where the only plausible reason for the police to be bothering the person is imputed political opinion. Yes, Your Honor. And here it seems like there's another logical reason, and that is he is suspected reasonable cause of the crime of harboring. Harboring is a – is a crime. While in the United States and most states it's a crime whether the person harbored is innocent or guilty and whether they're rightly charged or wrongly charged, and just harboring, and it's a crime in itself. Why doesn't that take it out of Harpenter Singh and require us to deny relief? Well, Your Honor, the petitioner was arrested on three occasions, and the police had given him various reasons on each arrest as to why they suspected him. The first time it was because they thought he had – was involved in harboring what they suspected were militants, and the second time part of the allegation was we suspect you're harboring militants, and the other allegation was you are Khalistani, and I will get to the Khalistani part in a moment. And the third time he was arrested was for something completely unrelated to harboring militants. Arresting somebody for harboring, though, is fine. I mean, I had a case when I was a district judge of a mother arrested for harboring her son. I understand, Your Honor, but the reasons for the arrest were twofold. One was the harboring, and the other was you are Khalistani, and those in the Punjab who support Khalistan, which is a separate Sikh state, are viewed as anti-national. And that is not a legitimate reason for the arrest, and therefore it raises an inference that perhaps the entire allegation of harboring was ill-conceived. I agree with you that it certainly gives plausibility to that inference, but our standard of review is such that the political opinion inference would have to be compelled to the exclusion of others and not merely plausible. But, Your Honor, what about the third arrest in which he was falsely accused of having knowledge of militants who had smuggled arms to and from Pakistan? If the police truly believed that the Petitioner was suspect, wouldn't they have conducted some sort of investigation? Wouldn't they have asked around in his village whether he had been seen with known militants? They would have done something more than simply allege that he was guilty based on really his previous arrest and the fact that he was a Sikh. Did the government rely upon harboring in its brief to the V.I.A.? I believe the government stated that the I.J. correctly denied the claims in that it was a legitimate arrest because the police had a legitimate reason for arresting him. Okay. I thought basically the I.J. had said this is not Harpender because in Harpender the person was falsely accused and here he was rightly accused or vice versa. Your Honors, we believe that the I.J. relied on speculation and conjecture to decide that it was a legitimate arrest. The Petitioner contends it was at all times false arrest. Because he states earlier that his grandfather had in the past helped individuals who were fighting against the government for independence, this concept of Khalistan, and he acknowledges that perhaps although he doesn't know, some of them might have been militants involved with the Khalistani commando force. But then he states that he believed that the people that he had helped were not so involved. He believed that he was actually sheltering persons who themselves had been persecuted falsely by the Indian government. And for that he was arrested and suspected. The question really is what the government believes, though. If he has militants into his house who themselves commit crimes from time to time and he gives them food, clothes, and takes care of them 10 or 12 times, and the police think, rightly or wrongly, that he's committing the crime of harboring, then I don't really see why it matters that he imagines or perhaps thinks correctly that these people have not done anything wrong. Because what it means is that the police are not persecuting him for political opinion. They're investigating or arresting him for crime. If that was so, Your Honors, then why did they also accuse him of being Khalistani? And, again, as I explained, the police viewed those. I don't see the inconsistency. Well, if they had accused him. Suppose it's the early 70s and the police were investigating weatherman bombers. It seems like that somebody was in the weatherman faction of the SDS would make it more likely that they were harboring the bombers. But, Your Honor, this Petitioner was never a member of a political group or a militant group. Furthermore, when he denied the allegations, nothing was investigated, nothing was followed up, and he was so brutally beaten that he required medical attention after all three arrests. How is that legitimate? I think I'll rest and leave the rest of the time for questions. Thank you, Counsel. Thank you. Good morning. My name is Curt Larson. I represent the Attorney General in this case. An asylum officer, an immigration judge, and the Board of Immigration Appeals each found that Petitioner's request for asylum must fail as the immigrant. Counsel, how is this different than Harpender saying? In the Rotnam case, this Court noted that the Petitioner and Harpender actually had sheltered terrorists also, and yet we came to the conclusion we came to. We're not riding on a clean slate, and as a three-judge panel, we're bound by Harpender saying and we're bound by Rotnam. So what specifically is different in this situation? There's a couple of differences, Your Honor. One is a timing difference. If you look at the State Department background notes, it states that there's been a political change, and specifically the 1997 elections restored normalcy, and it also states there's no evidence that Sikhs face harassment, mistreatment, or persecution merely on the basis of religion or political opinion. But that has to do – I'm sorry, sir. Basically, it states that the State Department background notes point out the fact that there has been a transition in India where Sikhs aren't persecuted on – based only on – That has to do, though, with changed country conditions, which was not reached yet. But you're asking the differences between those two cases, and those were back in times known. Another one is a factual finding. There's contentions on fact. The immigration judge found that this individual was aiding or abetting. Harboring was part of it. Aiding or abetting was what the immigration judge actually stated. But factually, that's not different than what Harpinder Singh did and what Rotnam did. They aided and abetted people by giving them food and giving them shelter and giving them those kinds of assistance. So whether the label was put on it or not, how were the acts of the individuals materially different? I think in those cases, and correct me if I'm wrong, Your Honor, the Ninth Circuit stated that there's no contentions of fact. Therefore, we look at it de novo. Here, there is a contention of fact. So therefore, you have to follow the Elias Zacharias, and there's deference. That's one. That doesn't actually answer my question. Is what the individuals actually did on the ground with respect to helping the militants, giving them food, giving them shelter, that sort of thing, whether the facts are agreed or the facts were contested, what did those individuals do that's different from what this individual actually did? Well, our contention would be that terrorist acts and criminal acts can be prosecuted by the government, and if, in fact, in the past case, if the facts of that case came out so that the individual was, and correct me if I'm wrong on this one, too, I think he was forced to harbor those individuals. Is that correct on the other case? No. That is correct. There are a couple of cases in which that's true, C-2 and another one, but not true in Rottenham or Harpender that I recall, but you may be right on that. And I think, again, going back to the premise, if I can pull it back in, if an individual is aiding or abetting terrorists, the government contends that it's a country's right and duty to prosecute that individual. What is the evidence that that's what they were doing, particularly with respect to the third arrest and the several days of beatings that followed it? What's the evidence in the record that demonstrates that on that occasion he was, in fact, arrested, whether they had the right to or the duty to, but that he actually was arrested and that there was a legitimate investigation going on? Right. In fact, the police called him in on that occasion and said that you are being investigated for this, which is a criminal for the – I think it was the – on that time it was the movement of arms. And so they said you were being investigated for this, and moving of arms is a criminal activity. So – and the other point – Was he ever charged for that? Say again, sir? Was he ever charged for that? No, sir. But if you look at the Dino case, as long as the police are trying to find evidence of criminal activity near the length of their investigation of the alien, the fact that they are pursuing suspect the court believes to be innocent nor unsavory – unsavoriness to their tactics give rise to an inference of political persecution, such as will support an asylum claim. It is only when the – Do you contend that beatings are, quote, unsavory, close quote, merely unsavory? I would – depending on the beating, sir. What do you do about the beatings and medical attention in this case? What's the proper doctrinal approach? In what way? According to the Ninth Circuit, persecution is an extreme concept. So there are times that when the Ninth Circuit has found when a person has actually been beaten that it wasn't persecution. Well, what's the government's position? Government's position is we don't even have to get that far, because what we're looking at is the actual government's going into and rooting out criminal activity, which they have the right and duty to do. I assume for the purpose of this question that the government's position on beatings is important to this panel's decision. What is the government's position, that it's okay, that it's greasy kid stuff, that it's horrible and terrible and we don't condone it? What's your position? The government's position would be that that would open up a Pandora's box. At what level would you say? So we ignore it? No, Your Honor. No, Your Honor. What's the answer to my colleague's question? Which one, Your Honor? Well, what do we make of it? What approach do we take? Suppose we have to write a paragraph about it. Suppose we have to write a paragraph about it. What would that paragraph say, if you could write it? That a sovereign government has the duty and ability to investigate criminal activity. As part of that investigation, the tactics that they use must... It's kind of hard, isn't it? Yes, Your Honor. Do you have some authority? Well, with the Demu case, it states that we basically don't look into the unsavoriness of what exactly happened. Again, we're going deep into, let's look at the first layer. Unsavory is charging someone or not charging them and keeping them in custody for a day or two longer than you should have, using abusive language, vocally demeaning someone. And beating is another step up the ladder, isn't it? Right. And we could actually go one more step up the ladder. If we are going to at least call it at some level, at least it has to rise to the level of persecution, because we're asking for if the individual... That's essentially the question that I think my colleagues are trying to get at. Assuming for the sake of these questions that we get past your assertion that this was a legitimate criminal investigation, and we understand that you don't give up that argument, but assuming that, are these repeated beatings that resulted in physical injuries requiring medical attention, did they rise, taken together on all three occasions, did they rise to the level of persecution? In our brief, we looked at those and we stated that it didn't rise to the level of persecution. Why not? It's stated in a footnote, I believe, on page 15. I don't want to know about the footnote. Just tell me in face-to-face and plain words why that's not persecution. The Ninth Circuit case law states that persecution is an extreme concept, and we listed a litany of cases where the Ninth Circuit had, in fact, found cases where a person was interrogated and beaten, and beaten on several occasions, and this Court found that that wasn't persecution. So the bottom line, the absolute lowest that you could go on this, if you're trying to find, and again, I'm not giving up on my first concept, but if you say, if you go to this and you want to talk more about it, the absolute minimum that this Court has to uphold is what is persecution and what the Ninth Circuit has held that persecution is, which is an extreme concept. Mr. Singh provided food, shelter, and clothing to terrorists. There's evidence of legitimate and logical prosecutorial purpose. It was India's right and duty to conduct a criminal investigation into criminal activities. There are facts in dispute. The immigration judge found that Mr. Singh was, in fact, aiding terrorists, and also the fact in dispute is the political climate in India has changed. Subject to your questions. Your Honors, I would just conclude by stating that persecution is both an objective and a subjective test, and this Court has found that forcing a woman to wear a head covering against her will can be construed as persecution. Therefore, the three arrests and the brutal beatings that required medical attention do, in fact, constitute persecution. Also, Your Honors, the immigration judge failed to make a credibility finding in this case. Therefore, if you take the facts as stated by the petitioner, they must be given full credence. They were not found to be inconsistent nor implausible. In fact, the petitioner testified credibly to the three arrests and the fact that those three arrests were illegitimate. Thank you. Thank you, counsel.  We'll hear Dow just the same as Mr. Gonzalez. Good morning. May it please the Court, my name is Brian Mesger, counsel for the petitioner.
judges: Kleinfeld, Hawkins, Graber